FOURTH NATIONAL BANK, APPELLANT, V. ADAM RUTHER-
FORD ET AL., APPELLEES.

FILED FEBRUARY 12, 1915.   No. 18,006.

**Appeal: CONFLICTING EVIDENCE.** A judgment based upon the verdict of
a jury, rendered upon conflicting evidence, will not be set aside
unless it is manifestly wrong.

APPEAL from the district court for Adams county:
HARRY S. DUNGAN, JUDGE. *Affirmed.*

*John M. Ragan, James E. Eddie* and *E. E. Danly,* for
appellant.

*J. W. James* and *Karl D. Beghtol, contra.*

LETTON, J.

Action by the indorsee of a promissory note. The de-
fense is that the note was delivered to the plaintiff bank
to hold in escrow, together with two deeds, a note and mort-
gage, and other papers, during negotiations between de-
fendant Adam Rutherford and the payee, James B. Blazer,
for the purchase of certain lands; that the negotiations fell
through, and the sale was never consummated; that the
bank fraudulently and without authority from Rutherford
delivered the note to Blazer; and that afterwards Blazer
indorsed the note to the bank, which took it with full
knowledge of these facts and was not a *bona fide* holder for
value. Verdict and judgment for defendants. Plaintiff ap-
peals.

The vital question presented is whether the note was
ever delivered to Blazer by Rutherford, or whether it was
placed in escrow and delivered to him without authority
by the plaintiff, for, of course, if this course was pursued,
the bank could not be a purchaser and holder in due course
of business.

The evidence shows that Blazer and Rutherford on May
27, 1910, went to the office of an attorney at Wichita, named

Hatfield, to procure the contract drawn. Hatfield drew the contract, two deeds and a mortgage. By the terms of the contract Blazer agreed to sell to Rutherford certain lands in Kansas, and Rutherford, in payment agreed to convey to Blazer certain lands in New Mexico, assume a mortgage of $5,600 on the Kansas land, give Blazer a note for $4,400 secured by a second mortgage on the same land, and pay him $500 in money and $500 in a negotiable promissory note, due and payable January 1, 1911. (The latter is the note in controversy.) The contract further provided that the deeds, mortgage, contract and notes should be deposited in the Fourth National Bank of Wichita, with instructions that, when Blazer was satisfied with the equipment and working of a well and pump to be placed on the New Mexico farm by Rutherford, the deeds, notes and mortgage should be delivered to the respective parties, but that, if Blazer was not satisfied, the bank was to deliver back the deeds, mortgage and notes to the parties making the same, and the agreement was to be discharged. When Blazer and Rutherford left the office of Mr. Hatfield, Blazer had an envelope containing the deeds, mortgage and contract in his pocket. When they arrived at the bank they drew up the $4,400 note, the $500 note, a draft for $500, and a check for $12.50. So far there seems to be no dispute in the evidence.

Rutherford testifies that when they went to the bank they met its president, L. D. Naftzger, and explained that they were making an exchange of land and wanted to leave some papers in the bank; but they also had a conversation with the younger Naftzger, who was assistant cashier; that after signing the notes Rutherford gave them to Blazer; that Blazer put the notes in the envelope with the other papers, gave them to Mr. Naftzger, and told him they were to be placed in escrow. "Q. Where did you go after you had signed that? What did you do then, and what did he do? A. We turned around to Mr. Naftzger's desk. Q. What did he do with the notes? A. He took them out of the envelope and looked at them. Q. Who did? A. Mr. Naftzger." He also said that by agreement Blazer directed

Naftzger to send the $500 note to Hastings to have Mr. Rutherford's brother sign, and this was done. The contract recited: "The deeds and mortgage and *notes specified herein* shall be deposited," etc.; that, if Blazer is satisfied with the well, "the said deeds and *notes* shall be delivered," and that, if he is not satisfied, then "the bank is hereby instructed to deliver back the said deeds and mortgage and *notes* to the respective parties." Rutherford denies an absolute delivery to Blazer, but one for the purpose only of procuring his brother's signature and replacing the note in escrow.

For plaintiff Blazer testified that the note was delivered at the time it was executed; that it was never placed in the envelope and left in escrow, but that, after the deeds and mortgage were placed in the envelope and delivered, Rutherford signed the note, and they together asked Mr. Branch, the cashier of the bank, to send this note to Hastings; that afterwards he went to the bank and Branch handed him the note properly signed; that he indorsed and sold the note to the bank in August, 1910; that in the agreement the note was considered as cash and was not to be placed with the other papers in escrow.

Mr. Branch testified that he did not look at the papers in the envelope when they were handed to him; that there were no instructions on the envelope; and that he sent the papers to Hastings, as directed by Blazer; and that he never knew the $500 note had anything to do with the land transaction, but bought it at the suggestion of the president of the bank. Mr. Naftzger testified that, at the time of his conversation with Blazer relative to the purchase of the note, he did not know Rutherford, and purchased the note purely upon the faith of Blazer and what Blazer said about Rutherford.

Hatfield testified that he was acting as attorney for Blazer when he drew the papers; that the word "notes" appearing in the contract was an error of the stenographer and should have been the word "note." The envelope in which the papers were placed was produced. It bore the words "Blazer-Rutherford papers" in blue pencil in the

handwriting of Hatfield, also the words "2 warranty deeds, one mortgage and note $4,400, one contract," written in ink, also in Hatfield's handwriting. There is a conflict in the evidence as to whether the latter words were upon the envelope at the time it was delivered to the bank.

There is a direct conflict in the evidence. The fact that the contract mentions "notes" as being among the papers to be held in escrow corroborates Rutherford, but Hatfield testified that this was a clerical error. The language of the contract is somewhat ambiguous. Rutherford agrees "to pay said Blazer $500 cash in hand, earnest money, the receipt of which is hereby acknowledged by said Blazer, to execute his said promissory note to said Blazer for the sum of five hundred ($500) dollars as earnest money, due on or before January 1, 1911," but the receipt of the note is not acknowledged, as it well might be if the other note only was to be placed in escrow.

The plaintiff contends that the evidence does not sustain the verdict, and that the court erred in refusing to direct a verdict for plaintiff. We are unable to view the evidence in this light. If, as Rutherford testified, the note was not delivered to Blazer, and was placed in the bank to be held in escrow, and was afterwards delivered to Blazer by the bank in violation of the escrow agreement, Blazer acquired no title, and the bank was not an innocent purchaser and a holder in due course. We are inclined to the view that the greater weight of testimony is with the plaintiff; but it must be said that, if the jury believed Rutherford's testimony, and disbelieved that of Hatfield and Blazer, it is sufficient to support the verdict.

The judgment of the district court is

AFFIRMED.

MORRISSEY, C. J., ROSE and HAMER, JJ., not sitting.